UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X

[BOCCARA GALLERY INC.and
DIDIER MARIEN,

        Plaintiffs,                             Index No.

    -against-

BOCCARA ART, INC., LIUBOV BELOUSOVA,
and JOHN DOES 1-10,

        Defendants.

-------------------------------------------------------------------------------X

## COMPLAINT

### Summary of Allegations

1.      Plaintiff Didier Marien, who also controls the corporate plaintiff, is a Paris-based art dealer who was worked for decades under the "Boccara" mark.  Plaintiffs bring this suit against Mr. Marien's ex-wife Liubov Belousova and entities controlled by her due to Ms. Belousova's egregious campaign of infringement of the "Boccara" mark, unfair competition, unfair business practices, and other wrongdoing as set forth below. All Exhibits are attached to the Declaration of Didier Marien, dated March 16, 2022, and are incorporated herein by reference.

2.      Mr. Marien began working as an art dealer in Paris in 1984.  In 1994, ten years later, Mr. Marien acquired the "Boccara" gallery, founded in Paris in the 1950s by Dario Boccara.  When Mr. Boccara retired, Mr. Marien acquired the name, location, and business relations of the former owner and continued to do business under the "Boccara" name.  "Boccara" had a specialty in high-end rugs, tapestries and other objects of fine art.

3.      From 2004 through 2010, Mr. Marien, in collaboration with Didier Lorence and Frank Laverdin, opened and operated a Boccara Art Gallery in New York City. After

closing the Boccara physical gallery location in 2010, and until re-opening of the Boccara physical gallery, Mr. Marien continued the Boccara exhibition and on-going presence through a collaborative arrangement with Didier Lorence, in addition to continuously attending art fairs in the United States every single year.

4.      In addition to operating permanent galleries in cities such as Paris (ca. 1950-Present) and New York (2004-2010), as well as collaborating with U.S. entities and individuals thereafter to continuously maintain the "Boccara" mark in the United States, Mr. Marien has also been continuously participating in many art fairs, across the globe and in the United States, art fairs being an extremely important marketing channel for fine art.

5.      In 2005, Mr. Marien married Ms. Belousova.  At no time did Ms. Belousova acquire any ownership interest in the "Boccara" name, its goodwill, or business relations. The couple was divorced before the Tribunal de Grande Instance in Paris in April 2014. The decree granting the divorce specified that Mr. Marien would retain his sole ownership of the "Boccara" business, while Ms. Belousova received full ownership of their common residence (valued at €1.5 million).

6.      After the divorce, sometime in 2018, Ms. Belousova moved to the United States, and in violation of the terms of the divorce decree,  embarked on a bad-faith campaign to divert and profit from the significant goodwill built up in the "Boccara" name. That goodwill had been built up over decades by Mr. Marien and his predecessor in interest.

7.       Defendant Belousova has not only opened several purported art galleries in multiple cities incorporating the "Boccara", used photographs of actual goods owned by Mr. Marien's business, but has also applied to art fairs under that name, including some of the very same to which Mr. Marien has applied.  Such conduct not only evidences Ms.

Belousova's attempts to illegitimately profit from the "Boccara" name, but also has resulted in actual confusion of her bootleg enterprise with the authentic "Boccara" name, including disputes with vendors confusing the two entities, on the restitution of some expensive artwork that has been consigned with Ms, Belousova, and significant lost sales to Plaintiff due to confused consumers being diverted to Defendant or has resulted in the Plaintiff's exclusion from such fairs as a result of the confusion over the "Boccara" name. .

8.    The bad-faith use of the Plaintiff's "Boccara" mark is manifested by the nearly-exact rendering used by the Defendant.  Plaintiff's mark is above, Defendant's below:





9.    In this action, Plaintiffs ask this Court to end this campaign of illicit profit and piracy, by finding that the Defendant has engaged in unfair competition under state and federal law, including trademark infringement, and to find that Defendant are liable under various other causes of action.

<u>Parties</u>

10.    Plaintiff Boccara Gallery Inc. is a New York corporation with its principal place of business at 232 E 59th St., New York, New York 10022.

11.    Plaintiff Didier Marien is a citizen and resident of France.

12.     Defendant Liubov Belousova is, on information and belief, a citizen of Russia and resident of the state of Florida.  As set forth in more detail below, Ms. Belousova and Mr. Marien were previously married and divorced.

13.     Defendant Boccara Art, Inc. is a  is a New York corporation with its principal place of business at 130 W. 56th St, 5M, New York, New York 10019.

14.     Defendants John Doe 1-10 are entities and individuals acting in concert with Defendants in the acts described in this Complaint.

<u>Jurisdiction and Venue</u>

15.     This Court has jurisdiction of this matter under 28 USC §§1331 and 1332.

16.     A substantial part of the acts complained of have occurred, in part, within this District.

17.     Defendant's business enterprises maintain their "main office at Central Manhattan" within the Southern District of New York.

18.     Venue in this district is proper under 28 USC §1391.

<u>Facts</u>

19.     Didier Marien is a well-known art dealer who began his career in Paris, France.  Mr. Marien has been a designer, collector, and has been an art dealer since 1984. Mr. Marien graduated from the Ecole des Gobelins in 1981 with a degree in photography. Mr. Marien is known on the world market as a designer and expert in fine carpets and tapestries. He is also a member of the European Chamber of Art Consultants.

20.     After having worked as an art dealer in Paris for several years, Mr. Marien purchased the "Boccara" business, including its goodwill and marks, in 1994. Mr. Marien developed Boccara into a globally renowned and recognized fine art brand.  "Boccara" is based in France and specializes in prestigious ancient and modern tapestries and artistic rugs with gallery locations around the world including Paris, New York, Miami, Moscow,

4

London, and Brussels.  Alongside its expertise in high-end rugs and tapestries, "Boccara" also deals in contemporary art such as painting, sculptures, and other renowned contemporary fine art.

21.    In general, and in addition to continuously doing business under the name "Boccara," Mr. Marien, since the year 2000, has done and is currently doing business under the name and trademark "Boccara Design,"  "E-Boccara," "Boccara Online," "Maison Boccara," "Boccara House," and  "Boccara Rugs," for its originally created rugs made with the strictest respect for weaving traditions.

22.    With respect to fine arts (i.e., paintings, sculpture, etc.), Mr. Marien has done and is doing business under the name and trademark "Boccara Fine Art," "Boccara Art," "Boccara Gallery," and "Gallerie Boccara".   Mr. Marien has done business under these trademarks starting since 2007.

23.    In 2004, Mr. Marien formed Boccara Gallery New York, Inc. in the state of New York, and operated a permanent gallery until 2010. From 2010, Mr. Marien continued the Boccara Gallery through collaboration and representative arrangements with other art dealers, i.e., Didier Lorence and Franck Lavardin.

24.    Mr. Marien has actively protected and enforced its intellectual property in the "Boccara" name worldwide since its inception and has continuously updated protections of its various marks through the filing of trademark applications with the U.S. Patent and Trademark Office and abroad. Mr. Marien owns/has owned the following trademark registrations worldwide:

| Mark | Reg. No. | Status | Country | Owner | IC Class | Reg. Date |
|---|---|---|---|---|---|---|
| Maison | 4565607 | Active | France | D. Marien | 14,16,19,20, | 10/25/19 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Boccara | | | | | 21, 27 | |
| Boccara Art | 423071 | Active | France | D. Marien | 2, 16 | 4/1/16 |
| Boccara Design | 073539112 | Active | France | D. Marien | 05, 16, 20, 24, 27 | 11/22/07 |
| Boccara Gallery | UK00003284025 | Active | UK | D. Marien | 6, 16, 20, 24, 27 | 4/20/18 |
| Boccara Gallery | 1027728 | Active | Benelux | D. Marien | 6, 16, 20, 24, 27 | 4/12/18 |
| Boccara Fine Art | UK00003284029 | Active | UK | D. Marien | 6, 16, 20, 24, 27 | 4/20/18 |
| Boccara Fine Art | 184427063 | Active | France | D. Marien | 6, 16, 20, 24, 27 | 6/1/18 |
| Boccara Fine Art | 1027729 | Active | Benelux | D. Marien | 6, 16, 20, 24, 27 | 4/12/18 |
| Boccara Design Online | 3944103 | Active | France | D. Marien | 6, 16, 20, 24, 27 | 12/28/12 |
| Galerie Boccara | 073539111 | Active | France | D. Marien | 6, 16, 20, 24, 27, 35 | 11/22/07 |
| E-Boccara | 3944089 | Active | France | D. Marien | 16, 20, 24, 27, 35 | 12/28/12 |
| Boccara.Online | 3944094 | Active | France | D. Marien | 16, 20, 24, 27, 35 | 12/28/12 |
| E-Boccara Design | 3944097 | Active | France | D. Marien | 16, 20, 24, 27, 35 | 12/28/12 |

| Boccara Rugs and Tapestries | 512816000 | Active | France | Societe MDM Maison Delloue Mison | | 3/6/2009 |
|---|---|---|---|---|---|---|
| Boccara House | 194565607 | Active | France | D. Marien | 14,16,19,20, 21, 27 | 7/16/19 |
| Galerie Boccara | 96613429 | Expired | France | D. Marien | 16, 20, 24, 27 | 2/29/96 |
| Dario Boccara | 95563708 | Expired | France | D. Marien | 20, 24, 27 | 3/21/95 |

25.     The Boccara Gallery maintains a gallery space at 232 East 59th St., New York, New York called "Boccara." Mr. Marien,has actively protected his intellectual property rights in the "Boccara" mark worldwide since its inception and has continuously filed for variations of the mark as necessary, including in France, the Benelux countries and England.

26.     Mr. Marien—with his international registrations of "Boccara" and use of "Boccara" in the United States since 2004—has proprietary rights to the use of "Boccara" and its logos and is entitled to restrict the use of the same, as well as any confusingly similar use, in association with similar products or services.

27.     Ms. Belousova is using the identical "Boccara" marks, such use being intentional trademark infringement, intentional use of a counterfeit mark, and false designation of origin under the Lanham Act causing significant damage and confusion in the marketplace, resulting in monetary damages and irreparable harm to the Plaintiff.

28.     Indeed, Ms. Belousova only became familiar with the "Boccara" trademark as a result of her years of marriage to Mr. Marien and having met Mr. Marien while he was promoting "Boccara" in Russia at an art show where Ms. Belousova was his translator. Even more egregious, in exchange for receiving full ownership of their common residence (valued at €1.5 million Ms. Belousova agreed as part of her divorce from Mr. Marien that Mr. Marien would "keep all the shares and securities relating to his professional activity[.]"

29.     After so many decades, the "Boccara" name has developed an association in the relevant market, including the United States, for high-quality goods. Furthermore, the mark is associated with Mr. Didier personally as the sole owner and principal for over 25 years.

30.     Mr. Marien operated under the "Boccara" name in New York since 2004 until 2010.  Since 2010, Mr. Marien acted through a fellow art dealer based in New York named Didier Lorence in the United States.  Such arrangement was formalized by agreement .

31.     Mr. Marien's "Boccara" business has maintained a presence at art fairs in the United States, including such shows as the 2004 Palm Beach International Art & Antique Show, in Palm Beach, FL, 2004 Washington Antiques Show, Washington, CT (through Mr. Lorence), 2006 International Art + Design Fair, New York, NY, 2015 Art Miami, Miami, FL,  2015 Maison & Objet Americas, Miami Beach, FL, 2015 Art Wynwood, Miami, FL, 2015 Palm Beach Art & Antique Show, Palm Beach, FL, 2015 LA Art Show (private event), Los Angeles, CA, 2018 Palm Beach Art & Antique Show, Palm Beach, FL, 2018 Palm Beach International Art Fair, Palm Beach, FL, and the 2020 Palm Beach Modern + Contemporary Art Fair, Palm Beach, FL.

### Defendants' Infringing Conduct

32.     Defendant Belousova had no previous knowledge of the "Boccara" name / trademark prior to her meeting with Mr. Marien.  Among the many places where Mr. Marien has been active was Russia, where Ms. Belousova served as his translator.

33.     At no time did Mr. Marien grant Ms. Belousova an ownership interest in the Boccara business, its marks, or its goodwill.  At all times since 1994, Mr. Marien has been the sole owner of the "Boccara" mark.  The absence of any such interest on the part of Ms. Belousova is confirmed by the judgment of divorce granted by the Tribunal de Grande Instance of Paris, dated April 20, 2014, which held that that Mr. Marien would retain all of his ownership rights related to his professional activities.

34.     Nevertheless, after their divorce, and in violation of the terms of the decree, Ms. Belousova opened purported art galleries under the name "Boccara," Boccara Art," "Boccara Design," "Boccara Fine Art," and "Boccara Galleries."."  The Defendant falsely claims to have founded the Boccara Galleries in 2007 with co-founder, Julia Bogichevich and to operate galleries in New York, Miami, Palm Beach, Los Angeles, and Moscow, with representatives in Chicago and Seoul, S. Korea.  See Exhibit [Website].

35.     Defendant also uses, at times, Boccara as her last name instead of her real last name – Liubov Boccara. (Facebook public profile). Exhibits [26; 27; 28]

36.     Defendant has also been engaging in the practice of listing goods owned and sold by Plaintiff. On one of her marketing public profiles (Artsy), Defendant is seen listing the Kandinsky Tapestry – a rare and unique tapestry owned and sold by Didier Marien / Boccara. This practice is intentional and malicious creating the illusion that both entities are controlled by the same entity. Exhibits [29; 31; 33]

37.     Defendant has also been using Didier Marien's photographs on some of her marketing sites (PINTEREST) to create the illusion that again, all Boccara entities are

controlled by the same entity, Boccara Galleries, and that she is the CEO and founder. Exhibit [29]

38.     Defendant has gone as far as leveraging media coverage to spread false statements on the origin and ownership of Boccara and her alleged affiliation. Defendant has falsely been claiming in several featured articles that she is the founder and CEO of Boccara Galleries and has founded Boccara Galleries in 2007.  In one article, she further claims that she co-founded the galleries with a co-founder, Julia Bogichevich in 2007. In another instance, she claims that she has "brought all the Boccara Galleries online" as a result of the pandemic. Exhibits [31; 33; 34]

39.     In 2017, Mr. Marien applied for and accepted a booth at the 2017 Palm Beach Jewelry, Art & Antique Show in Palm Beach, FL.  After finding out that the fair had also accepted an application from Defendant Belousova's illicitly competing enterprise, Mr. Marien withdrew his application from the fair, finding it "unacceptable if there are any other companies or galleries who attempt to exploite[sic] or take advantage of our brand name."  Exhibit [44].

40.     The Defendant has also applied to other art fairs where Plaintiff has participated as well.  Thus, demonstrating that Defendant is purposefully occupying the same channels of commerce as the Plaintiff, and using Plaintiff's Boccara name and long established world class reputation to access exclusive art fairs, normally reserved to world-class, leading and established art dealers whom have established loyalty and trust in the art world

41.     Defendant also used Plaintiff's Boccara name, goodwill, and established reputation to gain access to exclusive artists and obtain ultra expensive artwork on consignment. Some of these artists have had a difficult times having their artwork returned and, often, reach out to Plaintiff for restitution and complaints, thinking that they are the

same entitles. This has been damaging to Plaintiff's reputation. Exhibits 48; 49; 50; 51.

EXHIBITS 52; 53; 54; 55; 56; 57 RE ITEMS / ARTWORK ON CONSIGNMENT NOT

RETURNED BY BOCCARA ART AND DAMAGING THE BOCCARA BRAND

42.     Defendant has gone so far as to copy the "Boccara" logo, down to the font and

lettering.  Below is one of the renderings of the "Boccara" name in use by the Plaintiffs for

many years, before Defendant embarked on the infringing enterprise:



43.     Below is the nearly identical rendering used on Defendants' website:



44.     Defendant Belousova has no colorable basis to use the "Boccara" name and

certainly none to render the name in a nearly-exact copy of that used by the Plaintiff.  A

close copy of the logo indicates Defendant's bad faith, intent to sow confusion and illicitly

profit from the goodwill that it took Plaintiff Marien years to build up.

45.     In addition to using the name and nearly identical typeface, Ms. Belousova

has also engaged in cybersquatting, i.e., the improper registration of various internet

domain names with the purpose of causing confusion with Plaintiff and his business.

46.     For example, below are the domains that have been associated with Mr.

Marien:

boccara.com

boccarafineart.com

boccara-art.fr

boccaranewyork.com

boccaramiami.com

boccara.us

didiermarien.com

boccararugs.com

boccaraparis.com

boccarainternational.com

boccaragallery.com

boccaraonline.com

boccarafineartonline.com

boccara-international-art-gallery.com

See Exhibits [66 THROUGH 85]

47.     Egregiously, Defendants have registered domains in order to confuse the public and to misappropriate the goodwill of the Boccara mark.  Where Mr. Marien has registered and used, for example,  boccara-art.fr The Defendants have registered boccara-art.com and boccaraart.com Exhibit [86; 87; 88]

48.     Defendant has engaged in a pattern and continuous practice of repeatedly using and imitating all of Plaintiff's various business names and trademarks, i..e, Boccara art, Boccara Galleries, Boccara Design, and Boccara Fine Art. This repeated and malicious practice demonstrates that Defendant is engaging in a fraudulent scheme to control all Plaintiff's business ventures.

49.     In addition to the above, Defendants' use of the "Boccara" mark has led to the following further instances of actual confusion:

50.     Defendant has engaged in conduct that has lead her buyers to seek restitution on account of the sale of artwork and those unsatisfied customers have approached Mr. Marien and his entities regarding such complaints.

51.     Defendant has had disputes regarding consigned artwork where unhappy consignors have approached the Plaintiff and his entities.

52.

## CAUSES OF ACTION

### Count I

### TRADEMARK INFRINGEMENT IN VIOLATION OF 15 U.S.C. § 1125(a)

53.     Plaintiffs repeat and reallege the previous paragraphs as though fully set forth herein.

54.     Defendant's unauthorized use of the name "Boccara" in connection with the advertising or sale of art, design, and antiquities, infringes on Plaintiff's trademark rights in violation of Section 43(a) of the Trademark Act of 1946, as amended, 15 U.S.C. § 1125.

55.     Defendant's infringing activities have caused and, unless enjoined by this Court, will continue to cause irreparable injury and other damage to Plaintiff's business, reputation, and goodwill in the "Boccara" mark, for which Plaintiff has no adequate remedy at law.

### Count II

### FALSE DESIGNATION OF ORIGIN IN VIOLATION OF 15 U.S.C. § 1125(a)

56.     Plaintiff incorporates and realleges the previous paragraphs as if fully set forth herein

57.     Defendant's unauthorized use of the name(s) Boccara in connection with the advertising or sale of fine art, design or antiquities will inevitably cause consumer confusion or mistake and will deceive the consuming public into believing that there exists

an affiliation, connection, or association between Plaintiff and Defendants as to the origin, sponsorship, or approval of Defendant's products. Such conduct constitutes false designation of origin in violation of Section 43(a) of the Trademark Act of 1946, as amended, 15 U.S.C. § 1125.

58.      Defendant's infringing activities have caused and, unless enjoined by this Court, will continue to cause irreparable injury and other damage to Plaintiff's business, reputation, and goodwill in the 'Boccara" mark for which Plaintiff has no adequate remedy at law.

<u>Count III</u>

<u>CYBERSQUATTING UNDER THE ANTI-CYBERSQUATTING CONSUMER
PROTECTION ACT UNDER 15 U.S.C. § 1125(d)</u>

59.      Plaintiff repeats and realleges the allegations of the previous paragraphs as though fully set forth herein.

60.      The "Boccara" mark is distinctive and achieved distinctiveness prior to Defendant's registering  domains "boccara-art.com" and "boccaraart.com" (the "Infringing Domains")

61.      prior to Defendant undertaking her infringing acts.

62.      The Infringing Domain names are confusingly similar to the Boccara Mark.

63.      Defendant registered and uses the Infringing Domains to profit from the Boccara mark through the Infringing Domains and creating a likelihood of confusion as to the source, sponsorship, affiliation or endorsement of Defendant's website.

64.      Defendant's registration and use of the Infringing Domains is intended primarily to capitalize on the goodwill associated with the Boccara Mark.

65.     Defendant registered, trafficked in or used the Infringing Domains with bad faith intent to profit from the Boccara Mark and the associated goodwill of the Boccara Mark.

66.     The likely confusion resulting from Defendant's use of the Infringing Domains has harmed and continues to harm and dilute the distinctiveness of the Boccara Mark.

67.     Defendant's registration and use of the Infringing Domains cause consumers to falsely believe that the art sold under and in connection with said website are affiliated with, endorsed or approved by Plaintiff.

68.     Plaintiff has no adequate remedy at law and is suffering irreparable harm and damage as a result of the aforesaid acts of Defendant in an amount thus far not determined.

69.     Upon information and belief, Defendant has obtained gains, profits and advantages as a result of his wrongful acts in an amount thus far not determined.

<u>Count IV</u>

<u>INJURY TO BUSINESS REPUTATION AND DILUTION</u>
<u>NEW YORK GENERAL BUSINESS LAW § 360-1</u>

70.     Plaintiff repeats and realleges the allegations of the previous paragraphs as thoughfully set forth herein.

71.     Plaintiff, on behalf of the general public, as well as for itself seek recovery from Defendant for violation of New York General Business Law § 360-1, et seq.

72.     By virtue of Defendant's unauthorized use of the Boccara trademark, such use trading on the good will associated with Plaintiff, Defendant has misled and will continue to mislead the public into assuming a connection between the Plaintiff and Defendant.

73.     By falsely suggesting a connection with Plaintiff, Defendant is likely to cause public confusion constituting unfair competition within the meaning of New York Business Law § 360-1.

74.     If such action on the part of Defendant continues, Plaintiff will suffer irreparable harm of a continuing nature for which there is no adequate remedy at law.

75.     Plaintiff has no adequate remedy at law and is suffering irreparable harm and damage as a result of the aforesaid acts of Defendant in an amount thus far not determined.

76.     Upon information and belief, Defendant has obtained gains, profits and advantages as a result of his wrongful acts in an amount thus far not determined.

<u>Count V</u>

<u>COMMON LAW TRADEMARK INFRINGEMENT</u>

77.     Plaintiffs repeats and realleges the allegations of the previous paragraphs as though fully set forth herein.

78.     Defendant's acts previously alleged herein constitute common law trademark infringement.

79.     Plaintiff is without adequate remedy at law, as Defendant's acts have caused Plaintiff irreparable harm to its business reputation, good will and stature in the business community.

80.     Plaintiff is informed and believes and thereon alleges that Defendant committed the above alleged acts oppressively, fraudulently, maliciously and in conscious disregard of Plaintiff's rights, and Plaintiffis therefore entitled to exemplary and punitive damages pursuant to the common law of the State of New York in an amount sufficient to punish, deter and make an example of Defendant.

81.     Defendant's marketing of art under the "Boccara" name, is without any permission, license or other authorization from Plaintiff.

82.     Defendant's conduct is in interstate or international commerce.

83.     Plaintiff has no adequate remedy at law and is suffering irreparable harm and damage as a result of the aforesaid acts of Defendant in an amount thus far not determined.

84.     Upon information and belief, Defendant has obtained gains, profits and advantages as a result of his wrongful acts in an amount thus far not determined.

## Count VI

### MISAPPROPRIATION AND UNFAIR COMPETITION
### UNDER NEW YORK COMMON LAW

85.     Plaintiff repeats and realleges the allegations of the previous paragraphs as though fully set forth herein.

86.     As a "well known mark", Plaintiff's "Boccara" mark is entitled to protection under New York unfair competition law.

87.     Plaintiff owns protectable common law trademark rights in New York, in and to the Boccara Mark.

88.     Upon information and belief, Defendant intended to misappropriate the Boccara Mark when adopting the Boccara trademark to create the association in the minds of consumers that the Defendant's business is connected with the Plaintiff.

89.     Defendant's misappropriation and use of the Boccara trademark without Plaintiff's consent in New York is likely to cause confusion and mistake in the minds of the public, leading the public to believe that Defendant's business is related to or is affiliated with Plaintiff.

90.     Defendant's aforesaid acts constitute misappropriation and infringement of Plaintiff's property rights, goodwill and reputation and unfair competition under the common law of the State of New York.

## Count VII

## ENFORCEMENT OF FRENCH COURT JUDGMENT

91.     Plaintiff repeats and realleges the allegations of the previous paragraphs as though fully set forth herein.

92.     Under the divorce decree between Plaintiff and Defendant, Defendant renounced any interest in the business of the Plaintiff.

93.     Defendant's continued use of the "Boccara" mark is in violation of the judgment of the French court.

94.     Plaintiff has incurred irreparable damages on account of Defendant's failure to obey the judgment of the French court.

95.     Therefore, the Plaintiff asks that this Court enforce the judgment of the French court to the extent that it enjoins the Defendant from further use of the "Boccara" name.

## Count VIII

## BREACH OF CONTRACT

96.     Plaintiff repeats and realleges the allegations of the previous paragraphs as though fully set forth herein.

97.     The parties' agreement before the French court can be enforced as a stipulation.

98.      Such stipulations can be enforced by this Court as a contract.

99.     The stipulation or contract required that Defendant renounce all interest in the Plaintiff's business.

100.    Defendant's use of the "Boccara" mark violates the stipulation of the parties before the French court.

101.    Plaintiff is suffering irreparable harm on account of Defendant's use of the "Boccara" mark.

102.    Therefore, the Plaintiff asks that this Court enforce the stipulation of the parties before the French court to enjoins the Defendant from further use of the "Boccara" name.

<u>**Jury Demand**</u>

The Plaintiff demands a trial by jury.

WHEREFORE, the Plaintiff demands that the Court enter judgment in its favor as follows:

A.  That the Defendant has violated Section 32 of the Lanham Act (15 U.S.C. <u>**§ 1125 (a); and 1115 (d);**</u> and Section 43 (a) of the Lanham Act

B.  That Defendant has violated New York General Business Law Section 360-1, engaged in common law trademark infringement, and engaged in unfair competition in violation of New York statutory and common law;

C.  That the Defendant has violated the divorce decree of the French court, which shall be enforced by a grant of damaged in an amount to be proved at trial and to permanently enjoin any further violations;

D.  Granting an injunction permanently enjoining Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the

foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise from

    a.  Distributing/providing, selling, marketing, advertising, promoting or authorizing any third party to distribute/provide, sell, market, advertise or promote art, including rugs, tapestries and antiquities, bearing the names and marks "Boccara" and any other mark that is a copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's Boccara marks;

    b.  Engaging in any activity that infringes Plaintiff's rights in its BOCCARA trademarks;

    c.  Engaging in any activity constituting unfair competition with Plaintiff;

    d.  Making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that Defendant's good and services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Defendant;

    e.  Using or authorizing any third party to use (in connection with any business, goods or services), any false description, false representation, or false designation of origin, or any marks, names, words, symbols, devices, or trade dress that falsely associate such business, goods and/or services with Plaintiff' or tend do so;

f.  Registering or applying to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating the mark BOCCARA or any other mark that infringes or is likely to be confused with Plaintiff's BOCCARA, BOCCARA ART, marks, or any goods or services of Plaintiff, or Plaintiff as their source; and

g.  Aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (a) through (g)

E.  Permanently enjoining the Defendant from use of the "Boccara" mark, [Same as C];

F.  Granting such other and further relief as the Court may deem proper to prevent the public and trade from deriving the false impression that any gods or services sold, distributed, licensed, marketed, advertised, promoted, or otherwise offered or circulated by Defendant are in any way approved, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiff or constitute or are connected with Plaintiff's good and services.

G.  Directing Defendant to immediately cease all display, distribution, marketing, advertising, promotion, sale offer for sale and/or use of any and all packaging, labels, catalogs, shopping bags, containers, advertisement, signs, displays, and other materials that feature or bear any designation or mark incorporating the mark BOCCARA or any other mark that is a copy,

21

simulation, confusingly similar variation, or colorable imitation of Plaintiff's BOCCARA mark, and to direct all distributors, retailers, wholesalers, and other individuals and establishments wherever located in the United States that distribute, advertise, promote, sell or offer for sale Defendant's goods or services to cease forthwith the display, distribution, marketing, advertising, promotion, sale and/or offering for sale of any and all goods, services, packaging, labels, catalogs, shopping bags, containers, advertisements, signs, displays, and other materials featuring or bearing the mark BOCCARA FINE ART AND BOCCARA ART AND BOCCARA GALLERIES or any other mark that is a copy, simulation, confusingly similar variation or colorable imitation of the Plaintiff's BOCCARA mark, and to immediately remove from the public access and view.

H. Directing that Defendant recall and deliver up for destruction or other disposition all goods, advertisements, promotions, signs, displays and related materials incorporating or bearing the mark BOCCARA or any other mark that is a copy, confusingly similar variation, or colorable imitation of Plaintiff's BOCCARA mark.

I. Directing Defendant to formally abandon with prejudice any and all of its applications to register the mark BOCCARA REGISTRATION NO. 970439000 or any other copy or confusingly similar variation, or colorable imitation thereof on any state or federal or federal trademark registry.

J.  Directing Defendant to cancel with prejudice any and all of its registrations for the marks BOCCARA ART and BOCCARA FINE ART or any mark consisting of, incorporating, or containing Plaintiff's BOCCARA mark or any copy, confusingly similar variation, or colorable imitation thereof on any state or federal trademark registry.

K.  Directing pursuant to Section 37 of the Lanham Act (15 U.S.C. §1119), the cancellation of US SERVICE MARK BOCCARA FINE ART REGISTRATION NO. 6127544 and any all other federal registration for the mark BOCCARA ART REGISTRATION NO. 5222547 or any mark consisting of, incorporating, or containing Plaintiff's BOCCARA mark or any copy, confusingly similar variation, or colorable imitation thereof owned or controlled by Defendant.

L.  Directing, pursuant to Section 35(a) of the Lanham Act (15 U.S.C. §1116(a)), Defendant to file with the court and serve upon Plaintiff's counsel within thirty (30) days after service on Defendant of an injunction in this action, or such extended period as the court may direct, a report in writing under oath, setting forth in detail the manner and form in which Defendant has complied therewith.

M.  Awarding Plaintiff an amount up to three times the amount of its actual damages, in accordance with 35(a) of the Lanham Act (15 U.S.C §1117(a).

N.  Directing that Defendant account to and pay over Plaintiff all profits realized by its wrongful acts in accordance with Section 35(a) of the Lanham Act (15 U.S.C §1117(a)), enhanced as appropriate to compensate Plaintiff for the damages caused thereby.

O. Awarding Plaintiff punitive damages and exemplar damages as the court finds appropriate to deter any future willful infringement.

P. Declaring that this is an exceptional case pursuant to Section 35(a) of the Lanham Act and awarding Plaintiff its costs and reasonable attorneys' fees thereunder (15 U.S.C. 1117(a)).

Q. Awarding Plaintiff interest, including prejudgment and post-judgment interest, on the foregoing sums.

R. Awarding such other and further relief as the Court deems just and proper.

S.  The costs and attorneys' fees of this action; and

T.  Such other and further relief as the Court deems just and proper.


Dated:        New York, New York
              March 18, 2022

                                    _/s/_____
                                    David J. Hoffman
                                    Attorney at Law
                                    Ernst & Linder PLLC
                                    30 Wall Street
                                    New York, New York 10004
                                    Tel: (917) 701-3117

                                    Email: hoffman@el-law.com

                                    ATTORNEY FOR PLAINTIFF